890 So.2d 543 (2005)
Brooke Nicole MULLIN, Petitioner,
v.
Ken JENNE, as Sheriff of Broward County, Florida, Michael J. Satz, as State Attorney, James V. Crosby, as Secretary of Florida Department of Corrections, Respondents.
No. 4D04-2315.
District Court of Appeal of Florida, Fourth District.
January 12, 2005.
*544 Thomas A. Morse, Fort Lauderdale, for petitioner.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Jeanine M. Germanowicz, Assistant Attorney General, West Palm Beach, for respondents.
MAY, J.
The defendant petitioned this court for a writ of habeas corpus. We ordered the petitioner's immediate release on June 17, 2004. We now grant the writ and issue this opinion.
The defendant was arrested and charged with possession of heroin and drug paraphernalia. She pled not guilty and "opted" into the drug court pretrial intervention program, pursuant to section 948.08(6), Florida Statutes (2003). On August 27, 2003, she signed a Deferred Prosecution Agreement [DPA], specifically providing that prosecution of the charges would be deferred for a period of twenty-four (24) months if she complied with nine requirements. Number 8 required her to "attend and successfully complete the BSO Drug Court Treatment Program...." The DPA further provided the judge could "revoke or modify the conditions" of the DPA by "[o]rdering [her] to continue in education and treatment or ordering that the charges revert to normal channels for prosecution...."
Upon the defendant's request at arraignment, the court ordered the defendant into a halfway house. At her first status conference on October 7, 2003, the court was advised that the defendant had failed to enter the halfway house and had not reported to the Department of Corrections. Over the defendant's objection, the court took her into custody. She was placed in a licensed, clinical substance abuse program in the jail until a bed became available at the county-run intensive residential treatment program.
At the next status conference on November 13, 2003, the defendant, defense counsel, and the court discussed the defendant's progress and her improved health and appearance since her placement in the jail-based program. She remained in custody awaiting placement in the residential treatment program.
On December 18, 2003, defense counsel reported the defendant absconded four days after release to the residential program. Defense counsel agreed that "[s]he definitely needed to dry out.... She has  She's a bad heroin addict." The court issued a no bond capias.[1]
On January 16, 2004, the defendant appeared in court to surrender on the capias. She had completed a 28-day residential treatment program in Naples, Florida, and was living in a halfway house. Defense counsel asked the court to allow her to continue her treatment in Naples and report to the Department of Corrections by mail. The court agreed, had the capias served on her, and released her on her *545 own recognizance. The court acknowledged that her record in the program had not been very good, but offered her a fresh start. The defendant was ordered to personally report to the Department of Corrections before returning to Naples.
On March 8, 2004, the court held its fifth status conference for the defendant. She was doing "wonderfully" in treatment, but still had not reported to the Department of Corrections. After two resets, her next status conference occurred on June 8, 2004. The court noted four relapses and ordered the defendant back into the licensed clinical treatment program located in the jail.
Defense counsel advised the court the defendant wanted to "opt" out of the program. He argued the court lacked the authority to place the defendant into custody. See Diaz v. State, 29 Fla. L. Weekly D960 (Fla. 2d DCA April 16, 2004), withdrawn, Diaz v. State, 884 So.2d 299 (Fla. 2d DCA 2004). The court responded that custodial treatment was not "punishment," but was "part of a treatment program." Relying upon the signed DPA in which the defendant agreed to complete the drug court treatment program, the court ordered her into the custodial treatment program for sixty days. This prompted the petition now before us.
The issue raised is whether a court can order a person to remain in a drug court treatment program when the administrative order creating the program requires participation to be "voluntary." We hold that a court cannot require a defendant to remain in the program when the administrative order makes participation "voluntary." Thus, a participant may "opt" out of the program when in violation of the program rules. However, this does not prohibit the court from using incarceration as a sanction for participants who choose to remain in the program.
In 1994, the Florida Legislature added subsection (6) to the pretrial intervention statute. See § 948.08(6), Fla. Stat. (1994). It provided an opportunity for eligible persons charged with possession and purchase of a controlled substance to participate in "a pretrial substance abuse education and treatment intervention program approved by the chief judge of the circuit, for a period of not less than 1 year in duration...." Id. This statute encouraged drug offenders to attend and complete treatment while being intensively monitored by the court in exchange for dismissal of their drug charges.
In 2001, the legislature enacted section 397.334, Florida Statutes, which adopted the Ten Key Components of Drug Court, recognized by the U.S. Department of Justice, and required each judicial circuit to establish a treatment-based drug court program. Key Component Six provides: "A coordinated strategy governs drug court responses to participants' compliance." Id. This component requires the development of a protocol for incentives and sanctions to help defendants stay in and complete treatment, recognize the consequence of failure to comply with program rules, and enjoy incentives for compliance.
Chief judges around the state met with representatives of the offices of the state attorney, public defender, corrections, and treatment professionals to establish the guidelines for the "treatment intervention program." Many jurisdictions issued administrative orders defining the parameters of the "treatment intervention program." Most of these orders did not include all of the details of the program, but relied upon the expertise of the drug court team to establish the protocol for *546 sanctions and incentives.[2]
The Chief Judge of the Seventeenth Judicial Circuit entered such an administrative order. That order provides: "Defendants arrested on or after October 1, 1993, who are otherwise eligible may participate in the program. Participation is strictly on a voluntary basis." See Administrative Order III-99-3-E, Seventeenth Judicial Circuit (emphasis added). It is this language which dictates the result in this case.
Section 948.08(6) provides two alternatives when the defendant fails to successfully complete the pretrial intervention program. The court may either continue the defendant in education and treatment or revert the case for criminal prosecution. The drug court judge in this case chose to continue the defendant in education and treatment, an appropriate decision given the defendant's history. However, the statute also provides for the program to be "approved by the chief judge of the circuit." In this case, the specific language of the administrative order mandates that program participation be "voluntary."[3] By the language employed in the order, the defendant had the right to "opt" out of the program.
If the defendant had been on probation, there can be no doubt that her violation, if proven, would have permitted the trial court to impose a term of incarceration up to five years in Florida State Prison. The fact that the defendant remains in pre-trial status should not prevent the trial court from using the jail-based sanctions that the defendant would otherwise be subjected to if on probation.[4] Unfortunately, the voluntary design of this program permits a defendant to "opt" out of the program and face the charges rather than experience the court-imposed sanction, no matter how ill-advised this decision.
We disagree, however, with the Second District's opinion in Diaz to the extent it prevents drug courts from using incarceration as a sanction for participants who choose to remain in the program, for those programs in which the court's administrative order does not mandate the "voluntary" nature of participation, and for post-adjudicatory programs.[5]
Drug court defendants must recognize consequences for their failure to comply with the program requirements of attending treatment and abstaining from drug use. "Contracting confers advantages on individuals when they manifest a desired *547 behavior, and penalizes them for violating expectations."[6] It has a proper place in drug court. Sanctions allow defendants to experience the consequences for non-compliance, without losing the opportunity to have their charges dismissed upon successful completion of the program. This life-changing opportunity is lost when the defendant is discharged from the program and reverted to a regular criminal division.
The coercive power of the court insures attendance at treatment and compliance with program requirements. The court's ultimate and inherent authority to incarcerate is normally used as a last resort when other sanctions fail. It is nevertheless an integral component necessary to the success of drug courts and their participants.
As recognized in the policy and goals of the Model Drug Offender Accountability and Treatment Act,
a drug offender should not be permitted to exit the criminal justice system until he or she has undergone an assessment and an appropriate form of treatment. The decision whether that treatment is provided in jail, prison, or elsewhere should be made by the courts based not only upon traditional sentencing criteria but also upon the professional diagnostic assessment of each drug offender.... The criminal justice system should be used constructively to motivate drug offenders to accept treatment and engage in the treatment process.
See Model Drug Offender Accountability and Treatment Act, p. 7, National Drug Court Institute, published by the Office of National Drug Control Policy and the Bureau of Justice Assistance, Department of Justice (May, 2004).
Indeed, the model act further provides that
[i]f the court finds that the drug offender: (1) is not performing satisfactory in drug court; (2) is not benefiting from education, treatment or rehabilitation; (3) has engaged in conduct rendering him or her unsuitable for the program; (4) has otherwise violated the terms and conditions of the agreement; or (5) is for any reason unable to participate; it may impose reasonable sanctions under the written agreement. The court also may incarcerate or expel the drug offender.
Id. at 8.
Drug courts provide the most comprehensive and effective control of substance abusers' criminality and drug usage while under the court's supervision. The process employed by drug courts represents the strongest opportunity for long term reduction in addiction and related chronic criminal activity, while offering significant savings in justice and societal costs. For these laudable goals and persuasive reasons, incarceration may be used as a sanction in drug court programs. However, the court may not compel participation, despite the best interests of the defendant, when the administrative order creating the program dictates that participation is voluntary.
STEVENSON and TAYLOR, JJ., concur.
NOTES
[1] Defense counsel advised the court that he had represented a couple of heroin addicts and they had both died. He was fearful that the defendant was "destined for the same road."
[2] Sanctions often include work assignments, increased treatment modalities, increased court appearances, increased urinalysis testing, community service, house arrest, and sometimes incarceration. This last sanction is used for defendants whose lives are at stake if left at liberty because they are unable to stop using and abusing drugs and alcohol. The treatment professional assigned to the drug court usually recommends the sanction or incentive to be imposed. The drug court judge ultimately decides.
[3] Had the administrative order indicated only "entry" into the program was "voluntary," a different result may have occurred.
[4] Admittedly, probation is imposed after a full plea colloquy and waiver of rights while the only right a defendant waives in the pre-trial drug court program is the right to a speedy trial.
[5] We also note the facts in Diaz differ from those in this case. First, the court in this case did not discharge the defendant from the program as was done in Diaz. Rather, pursuant to section 948.08(6), the court continued the defendant in education and treatment  that treatment happened to be located in an incarcerated setting. Second, the court in this case did not "sentence" the defendant. Rather, it entered an interim order for continued education and treatment.
[6] Satel, Sally L., DRUG TREATMENT: THE CASE FOR COERCION, National Drug Court Institute Review, Vol. III, p. 14 (2000).